UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00343-FDW-DCK

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| EARL WIILIAMS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment. (Doc. No. 11). Because Defendant failed to comply with the Court's Order to Show Cause, (Doc. No. 13), Plaintiff's Reply is unnecessary and this matter is ripe for disposition. For the reasons explained below, Plaintiff's Motion for Summary Judgment is GRANTED.

## 1. BACKGROUND

On July 30, 2015, Plaintiff Meineke Car Care Centers, LLC ("Plaintiff") brought this diversity civil action against Defendant Earl Williams ("Defendant") for breach of a Franchise and Trademark Agreement (the "franchise agreement") under which Plaintiff granted Defendant the right to operate a Meineke automotive repair shop for a period of fifteen years. (Doc. No. 1). Plaintiff is a Delaware limited liability company that maintains its principle place of business in Charlotte, North Carolina. Defendant is an individual citizen of the State of Wyoming.

In or around March 2010, Plaintiff and Defendant entered into the franchise agreement at the heart of this dispute. (Doc. No. 1). The franchise agreement granted Defendant the right to operate a Meineke shop at 752 Coffeen Avenue, Sheridan, Wyoming through March 14, 2025. Id. The franchise agreement authorized and licensed Defendant to: operate an automotive repair shop

1

under the Meineke tradename; display the Meineke logo; receive training and access to Meineke's methods, procedures and techniques; and participate in Meineke's established network of similar repair shops. Id. In return, Defendant agreed to pay Meineke on a weekly basis a continuing franchise fee equal to a varying percentage[1] of the franchisee's gross revenue and "advertising contributions" equal to eight percent of gross revenue. Id. Last, the franchise agreement prohibited transfer of the franchise—or any of its assets, revenues, or income—without Meineke's authorization. (Doc. 1-1).

Beginning in or around December 2013, Defendant began failing to pay Plaintiff some of the franchise fees and advertising contributions. (Doc. No 12-2). On April 7, 2015, Plaintiff terminated the franchise agreement with Defendant after learning that Defendant transferred control of his Meineke shop and its assets without Plaintiff's authorization. (Doc. No. 1). Plaintiff's Termination Notice also instructed Defendant to perform various post-termination obligations required by the franchise agreement, including payment of all sums owed by Defendant to Plaintiff. (Doc. No. 1-3).

At the time Plaintiff terminated the franchise agreement, Defendant owed Plaintiff twenty-three thousand, eight hundred seventy-five dollars and forty-two cents ($23,875.42) for missed payments.[2] Plaintiff also expected receipt of royalties and advertisement contributions under the franchise agreement to continue until, at least, March 2025. Plaintiff calculates the sum of the net present values of these amounts to be three hundred seventy-three thousand, three hundred eight dollars and two cents ($373,308.02).[3]

---

[1] Percentage dependent upon the type of service provided.
[2] $8,211.32 in unpaid franchise fees and $14,684.60 in unpaid advertising contributions.
[3] $104,691.18 for lost royalties and $268,616.84 for lost advertising contributions.

Plaintiff filed suit to recover these amounts owed and, to the extent their claims succeeded, reasonable attorney's fees and costs incurred. (Doc. No. 1). Defendant answered Plaintiff's complaint, (Doc. No. 3), and the parties jointly filed a Certification of Initial Attorney Conference, (Doc. No. 7). The Court entered a Case Management Order setting forth the timelines for, *inter alia*, filing and responding to dispositive motions. (Doc. No. 8). On May 11, 2016, Plaintiff filed a Status Report indicating that Defendant's counsel could not be reached to discuss matters relating to the progress of the case or Plaintiff's intention to file for summary judgment. (Doc. No. 10). Additionally, the Status Report indicated that Defendant failed to respond to Plaintiff's discovery requests, including requests for admission. Id. In accordance with the Court's Case Management Order, Plaintiff filed its pending Motion for Summary Judgment on May 18, 2016. (Doc. No. 11).

Defendant's response to Plaintiff's motion was due no later than June 6, 2016, under the Federal Rules of Civil Procedure and the Court's prior Order. Defendant failed to respond within the allocated time period. On June 14, 2016, the Court ordered Defendant to show cause for his failure to respond to Plaintiff's dispositive motion. (Doc. No. 13). Rather than comply with the Court's Show Cause Order, Defendant simply filed an untimely response. (Doc. No. 15). Defendant's response neither complies with the Court's Show Cause Order nor moves the Court to deem his response as timely filed. Finally, the Court notes that Defendant's untimely and noncompliant response fails to set forth any affirmative evidence whatsoever to counter Plaintiff's declarations and other exhibits proffered in support of its claims.

## 2. STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed.R.Civ.P. 56(e)).

Simply "rest[ing] upon the mere allegations or denials of [his] pleadings" is insufficient to survive a properly made and supported motion for summary judgment. Id. The non-moving party must adduce affirmative evidence, by means of affidavits or other verified evidence, showing that a genuine dispute of material fact exists. Id. Furthermore, neither "[u]nsupported speculation," Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1897), nor evidence that is "merely colorable" or "not significantly probative," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 1986) will suffice to defeat a motion for summary judgment. If the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, id. at 250, then, regardless of "any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered," Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (internal citations and quotations omitted). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. Zahodnick v. IBM Corp., 135 F.3d 911, 913 (4th Cir. 1997).

"Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the

4

uncontroverted facts entitle the party to 'judgment as a matter of law.'" Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). Therefore, the Court must review the motion and the materials submitted in support to determine if the moving party is entitled to summary judgment even where the adverse party fails to respond to the motion. Meyer v. Qualex, Inc., 388 F.Supp.2d 630, 634 (E.D.N.C. 2005); see also Fed.R.Civ.P. 56(e)(2).

### 3. DISCUSSION

In support of its motion, Plaintiff proffers numerous declarations and exhibits probative of the veracity of its claim—including copies of the agreements by and between Plaintiff and Defendant. (Doc. Nos. 1-1, 1-2, 1-3, 1-4; 12-1, 12-2, 12-3, 12-4, 12-5, 12-6). Defendant admits that the copies of the pertinent agreements are the best evidence of their contents. (Doc. No. 3, ¶¶ 10-14). Moreover, Defendant's Answer admits key facts relating to Plaintiff's cause of action. These admissions include that he "has not made certain payments to Plaintiff and that he transferred his business to another entity," (Doc. No. 3, ¶15).

Further, Defendant's failure to respond to Plaintiff's requests for admission conclusively established any remaining material facts, such as Defendant's ownership of the subject property and the operation of a competing business from those premises, in favor of Plaintiff. (See Doc. No. 10-1). These tacit admissions provide an appropriate basis for granting summary judgment. Gardner v. Borden, Inc., 110 F.R.D. 696, 697 (S.D.W.Va.1986) (cited favorably by Jones v. Jack henry & Assocs. Inc., 2007 WL 4226083 at *2 (W.D.N.C. Nov. 30, 2007); see also Fed.R.Civ.P. 36. Plaintiff, therefore, met its burden and it falls to Defendant to set forth specific facts establishing that a genuine issue of material fact exists.

Defendant's response, or lack thereof, fails to do so for several reasons. First, Defendant failed to file a response within the prescribed time. Indeed, it was only after the Court entered its

Order to Show Cause that Defendant took any action with respect to the pending motion. Then, Defendant simply filed his response without attempting to comply with the Court's Order by endeavoring to show some excusable neglect on the part of Defendant. Indeed, Defendant's response neglects to even acknowledge the existence of the Court's Order. The Court would be well within its discretion to simply strike Defendant's pleading as untimely, which would establish as uncontroverted the facts set forth in Plaintiff's motion.

However, even permitting Defendant's noncompliant and untimely filing to stand does nothing to change the ultimate analysis for purposes of summary judgment. Defendant's opposition to Plaintiff's motion sets forth no facts or evidence to contradict Plaintiff's contentions. At best, Defendant rests upon mere denials and allegations in his pleadings. At worst, he offers the Court unsupported speculation relating to Plaintiff's alleged antecedent breach. Defendant makes no showing beyond unsupported counter-accusations that reasonable minds could differ on any material point. Therefore, Defendant's response is insufficient to survive a properly made and supported motion for summary judgment.

## 4. CONCLUSION

IT IS, THEREFORE, ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

IT IS FURTHER ORDERED that judgment be entered in favor of Plaintiff in the amount of three hundred ninety-seven thousand, one hundred eighty-three dollars and forty-three cents ($397,183.43).

**IT IS SO ORDERED.**

Signed: June 22, 2016

Frank D. Whitney
Chief United States District Judge